**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION, <br><br> Plaintiff, <br><br> -against- <br><br> THE ROYAL BANK OF SCOTLAND GROUP PLC; RBS HOLDINGS USA INC.; RBS SECURITIES INC. (f/k/a GREENWICH CAPITAL MARKETS, INC.); RBS FINANCIAL PRODUCTS INC. (f/k/a GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.); RBS ACCEPTANCE INC. (f/k/a GREENWICH CAPITAL ACCEPTANCE, INC.); FINANCIAL ASSET SECURITIES CORP.; JOSEPH N. WALSH III; CAROL P. MATHIS; ROBERT J. MCGINNIS; JOHN C. ANDERSON; and JAMES M. ESPOSITO, <br><br> Defendants. | Case No. 3:11-cv-01383-AWT <br><br> ORAL ARGUMENT REQUESTED <br><br> August 21, 2014 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT ON THE STATUTES OF REPOSE**

WIGGIN AND DANA LLP
20 Church Street, 16th Floor
Hartford, CT 06103
Telephone: (860) 297-3700
Facsimile: (860) 525-9380

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ......................................................................................................................... 4

ARGUMENT ............................................................................................................................... 9

    I.      THE FHFA EXTENDER STATUTE ALTERS ONLY STATUTES OF
           LIMITATIONS, NOT STATUTES OF REPOSE ................................................... 11

          A.     The Plain Text of the FHFA Extender Statute Alters Only Statutes
               of Limitations, not Statutes of Repose .......................................................... 14

               1.   The FHFA Extender Statute Does Not Mention Statutes Of
                     Repose .............................................................................................. 15

               2.   The FHFA Extender Statute Employs Accrual Concepts That
                     Pertain Only To Statutes Of Limitations ........................................... 17

               3.   A Singular "Statute Of Limitation" Does Not Supplant Both
                     Statutes Of Limitation And Statutes Of Repose ............................... 18

          B.     Congress Understands the Distinction Between Statutes of
               Limitations and Statutes of Repose, and Did Not Choose to
               Preempt Statutes of Repose .......................................................................... 19

          C.     HERA's Structure and Purpose Further Demonstrate that the
               FHFA Extender Statute Alters Only Statutes of Limitations, not
               Statutes of Repose ........................................................................................ 22

          D.     The Presumption Against Preemption Further Supports RBS's
                Construction Of The FHFA Extender Statute ................................................ 24

    II.     WALDBURGER ABROGATES THE SECOND CIRCUIT'S RULING IN
           UBS ....................................................................................................................... 28

    III.    IN THE ALTERNATIVE, THIS COURT SHOULD CERTIFY THE ISSUE
           FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) ...................... 33

CONCLUSION ......................................................................................................................... 36

## TABLE OF AUTHORITIES

### Cases

*Altria Group, Inc. v. Good*, 555 U.S. 70 (2008) .................................................. 25, 27

*Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420 (10th Cir. 1991) ............................................. 31

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) ..................................................... 33

*Baroque Timber Indus. (Zhongshan) Co., Ltd. v. U.S.*, 865 F. Supp. 2d 1300 (C.I.T. 2012) ............................................................ 33

*Bond v. United States*, 134 S. Ct. 2077 (2014) ................................................... 25

*Burke v. Dow Chem. Co.*, 797 F. Supp. 1128 (E.D.N.Y. 1992) .................................................... 25

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355 (5th Cir. 2005) .................................................................... 8, 15

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 5:04-CV-047-C 2004 WL 1926322 (N.D. Tex. Aug. 27, 2004) .................................................... 17

*Buttry v. General Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995) .................................................... 10

*Caviness v. Derand Res. Corp.*, 983 F.2d 1295 (4th Cir. 1993) .................................................... 5

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ................................................ 25

*City of Pontiac Gen. Empls.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011) ............. 12, 17

*CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014) .............................................................. passim

*Dodds v. Cigna Sec., Inc.*, 12 F.3d 346 (2d Cir. 1993) .................................................... 4

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ....................................................... 25

*Emonds v. Newman Chrysler, Inc.*, 03-cv-1114 (AWT), 2005 WL 293493 (D. Conn. Feb. 4, 2005) ............................................................ 10

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990) .......................................................... 26

*FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp.,* 966 F. Supp. 2d 1018 (C.D. Cal. 2013) ........................................................ 16, 26

*FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp.*, 966 F. Supp. 2d 1031 (C.D. Cal. 2013) ........................................................ 17, 20, 26, 27

*FDIC as Receiver for Guaranty Bank v. Goldman, Sachs & Co., et al.*, No. A-14-CA-129 (W.D. Tex. Aug. 18, 2014) ............................................................... 2

*FDIC as Receiver for Guaranty Bank v. Merrill Lynch, Pierce, Fenner & Smith, et al.*, No. A-14-CA-126 (W.D. Tex. Aug. 18, 2014) ..................................... passim

*Federal Housing Finance Agency v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. 2013) ................................................................................................ 7, 29, 30

*FHFA v. Countrywide Financial Corp.*, 900 F. Supp. 2d 1055 (C.D. Cal. 2012) ................. 16, 18

*Goad v. Celotex Corp.*, 831 F.2d 508 (4th Cir. 1987) ........................................... 11, 24

*In re Federal Home Loan Mortg. Corp. Deriv. Litig.*, 643 F. Supp. 2d 790 (E.D. Va. 2009) ............................................................................................... 27

*In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477 (S.D.N.Y. Apr. 13, 2011) ......................................................................................................... 11

*In re S. African Apartheid Litig.*, Nos. 02 MDL 1499(SAS) etc., 2014 WL 1569423 (S.D.N.Y. Apr. 17, 2014) ............................................................... 28

*Kennedy v. U.S. Veterans Admin.*, No. 2:11-cv-150, 2011 WL 6296732 (S.D. Ohio Dec. 16, 2011) ............................................................................... 16

*Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson*, 501 U.S. 350 (1991) ........................ 20

*Martilet Mgmt. Servs., Inc. v. Bailey*, 12 CIV. 6691 PAC, 2013 WL 5420966 (S.D.N.Y. Sept. 27, 2013) ................................................................................ 10

*McDonald v. Sun Oil Co.*, 548 F.3d 774 (9th Cir. 2008) ............................................... 8

*Me. St. Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157 (C.D. Cal. 2010) ........................................................................................................ 5

*Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295 (S.D. Fla. 2000) ............................... 34

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ..................................................... 24, 25

*Morton v. Mancari*, 417 U.S. 535 (1974) ................................................................ 28

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007) ........................... 28

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, --- F.3d ----, 2014 WL 4069137 (10th Cir. Aug. 19, 2014) ......................................................... 9

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246 (10th Cir. 2013) ............................................................................................. 9

*NCUA v. Goldman Sachs & Co.*, 11-CV-6521-GW (C.D. Cal. Mar. 15, 2012) ......................... 16

*NCUA v. RBS Sec., Inc.*, 11-CV-5887-GW (C.D. Cal. Dec. 19, 2011) ......................................... 16

*NCUA v. RBS Secs. Inc.*, 900 F. Supp. 2d 1222 (D. Kan. 2012) ................................................. 16

*Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, 134 S. Ct. 2818 (June 16, 2014)............................................................................................................ 9

*Norfolk So. R. Co. v. Sorrell*, 549 U.S. 158 (2007)..................................................................... 22

*O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994)............................................................... 31, 32

*P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004) ................................ 5, 7, 11, 18

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979)......................... 33

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013).................... 11, 12, 24

*Resolution Trust Corp. v. Olson*, 768 F. Supp. 283 (D. Ariz. 1991) ........................................... 16

*Sadowski v. Technical Career Insts., Inc.*, 93 Civ. 0455 (PKL), 1995 WL 117595 (S.D.N.Y. Mar. 16, 1995) ........................................................................................... 35

*Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270 (2d Cir. 1968) ............................ 10

*Sikhs for Justice, Inc. v. Indian Nat'l Cong. Party*, No. 10 Civ. 2940, 2014 WL 1683798 (S.D.N.Y. Apr. 25, 2014)................................................................................... 28

*Stuart v. Am. Cyanamid Co.*, 158 F.3d 622 (2d Cir. 1998).......................................................... 12

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) .................................................... 27

*Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405 (9th Cir. 2002) ............................................................................................................... 12, 24

*Valentine v. LaBow*, 897 A.2d 624 (Conn. App. 2006) ................................................................ 5

*Waldburger v. CTS Corp.*, 723 F.3d 434 (4th Cir. 2013) ........................................................... 31

**Statutes and Rules**

12 U.S.C. § 1787(b)(14) ................................................................................................................ 6

12 U.S.C. § 1821(d)(14) ................................................................................................................ 6

12 U.S.C. § 1821(d)(2)(D).......................................................................................................... 27

12 U.S.C. 4617(b)(12) ......................................................................................................... passim

12 U.S.C. 4617(b)(13) ........................................................................................ 7

15 U.S.C. § 77m ............................................................................................... 4

28 U.S.C. § 1292(b) ............................................................................ 9, 33, 34

42 U.S.C. § 9658(b)(2) ..................................................................................... 8

Conn. Gen. Stat. Ann. § 52-577 ..................................................................... 5

D.C. Code § 31.5606.05(f) ............................................................................... 5

Fed. R. Civ. P. 56 ............................................................................................. 9

Fed. R. Civ. P. 56(b) ...................................................................................... 10

Va. Code Ann. § 13.1-522(D) .......................................................................... 5

## Other Authorities

Black's Law Dictionary ................................................................................... 17

Brief for Respondents in *Waldburger* at 24, *available at* 2014 WL 1260425 ............................ 29

Brief of Amicus Curiae Securities Industry and Financial Markets Association in
   Support of Appellants and in Support of Reversal (Addendum), *UBS*, No. 12-
   3207 (2d Cir. Sept. 25, 2012) .................................................................. 21

H.R. Rep. No. 104-481 (1996) ...................................................................... 21

Medical Justice Act of 2009, H.R. 1468 111th Cong. § 14 (2009) ............. 21

Defendants (collectively "RBS") respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case is one of the largest, most complex securities litigations in the nation, involving some 68 separate purchases of residential mortgage-backed securities ("RMBS"), the original unpaid principal balances of which total over $32 billion in the aggregate. The case has required, and will continue to require, an enormous amount of time, expense and resources from the Court, the parties, numerous third parties, and those parties' and third-parties' respective counsel. And yet, the complexity and problems associated with this case can and should be avoided, because **Plaintiff's claims are entirely barred under the applicable state and federal statutes of repose**. Although the Second Circuit had held in another FHFA case that a federal "extender" statute applied to extend the statute of repose for these claims, the Supreme Court's recent decision in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014) ("*Waldburger*") now makes clear that the statute at issue does *not* override statutes of *repose*. Indeed, as the first federal court to address whether a nearly identical extender statute extinguishes statutes of repose after *Waldburger* recently observed, the Second Circuit's prior decision "is irreconcilable with the Supreme Court's interpretation of [another extender provision] in *Waldburger*, and it is ultimately the Supreme Court's analysis which must control." *FDIC as Receiver for Guaranty Bank v. Merrill Lynch, Pierce, Fenner & Smith, et al.*, No. A-14-CA-126 (W.D. Tex. Aug. 18, 2014) (Ex. 11)

("*Merrill*"), slip op. at 17 (dismissing RMBS blue-sky claims against RBS and other defendants as barred by the applicable statute of repose).[1]

*Waldburger* arose under a similar federal extender statute, which the Court held does *not* override statutes of repose, rejecting both the result and the underlying rationale supporting the Second Circuit's 2012 ruling in the context of the extender statute at issue here.  Consequently, although the Court has not yet set a deadline for filing dispositive motions, in view of the Supreme Court's *Waldburger* decision, Defendants seek summary judgment dismissing the Amended Complaint.  This issue should be resolved promptly, by this Court and the Second Circuit, before the Court, the parties and additional third parties are required to spend further time, expense and resources litigating and defending against claims that are untenable as a matter of law.  Even if this Court were to determine it is bound by the Second Circuit's prior ruling— which it is not—the Court should certify this case-dispositive issue for immediate interlocutory review given the likelihood that such review would materially advance the ultimate termination of this litigation.

Indeed, the amount of time and resources this action will continue to require unnecessarily cannot be overstated.  The parties have produced millions of pages of documents, numerous individuals have and will be deposed, and dozens of third-parties have and will be required to produce millions of pages of loan files and other documents.  No less than eight fully briefed motions are presently pending before the Court.[2]  Expert discovery will be enormously

---

[1]     *Merrill* was decided together with *FDIC as Receiver for Guaranty Bank v. Goldman, Sachs & Co., et al.*, No. A-14-CA-129 (W.D. Tex. Aug. 18, 2014) (Ex. 12).  The decisions in the two cases are substantively identical, and RBS cites to the *Merrill* opinion herein for convenience.

[2]     The Court has yet to issue a written decision on Defendants' motion to dismiss, which was fully briefed on May 30, 2012, and decided in an order of September 30, 2013 stating that the motion was denied and that a written order would follow.  (Dkt. # 202).

time-consuming and expensive, particularly given Plaintiff's[3] intent to "reunderwrite" and review every piece of paper contained in some 7,000 individual loan files, second-guessing the decisions of thousands of underwriters, appraisers and others who originated the loans at issue. In short, this case would continue to involve a massive undertaking of resources as the case progresses toward the current September 2015 close of expert discovery, pre-trial motion practice, and trial.

At the same time, RBS' ability to obtain discovery in defense of the case has been seriously hampered by the fact that the securities transactions at issue occurred between six and nine years ago.  For example, hundreds of loan files in Plaintiff's chosen reunderwriting sample (which reflect a small fraction of the approximately 325,000 loans that support those securities) have not been located despite the parties' joint efforts.  Inevitably, many of the loan files that have been or will be located will be incomplete given the fact that the thousands of mortgage loans at issue were originated many years ago and the files in many instances have been transferred multiple times.  Likewise, Freddie Mac has apparently destroyed years of relevant emails during the period at issue.  And in the limited instances in which Defendants have been able to question GSE employees involved in the purchases at issue, the witnesses have disclaimed recollection of any particular transaction.

These issues starkly illustrate the importance of statutes of repose, which the Supreme Court emphasized "effect a legislative judgment that a defendant should be free from liability

---

[3]  "Plaintiff" refers to the Federal Housing Finance Agency ("FHFA"), which brings suit here in its capacity as conservator for the Federal Home Loan Mortgage Corporation ("Freddie Mac") and the Federal National Mortgage Association ("Fannie Mae," and, together with Freddie Mac, the "GSEs").

after the legislatively determined period of time." *Waldburger*, 134 S. Ct. at 2183.[4]  In accordance with the Supreme Court's holding in *Waldburger*, the claims should be dismissed, and any remaining doubt as to the effect of the extender statute in view of *Waldburger* should be addressed by the Second Circuit.

## BACKGROUND

Fannie Mae and Freddie Mac purchased the RMBS certificates at issue in this action (the "Certificates") between September 30, 2005 and January 23, 2008.  RBS SOF ¶ 1.[5]  FHFA, as their conservator, brought this action on September 2, 2011, alleging claims under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "1933 Act"); the District of Columbia and Virginia Securities Acts; and common-law negligent misrepresentation.  RBS SOF ¶ 3.  All of these claims, however, are subject to two- or three-year statutes of repose, which started to run no later than the dates the GSEs purchased their Certificates.  As a result, the latest applicable repose period expired as of January 23, 2011—three years after the last Certificate purchase, and well before the filing of FHFA's September 11, 2011 Complaint.

Section 13 of the 1933 Act provides the applicable limitations and repose periods for claims under Sections 11, 12 and 15.  *See* 15 U.S.C. § 77m (prescribing periods for Section 11 and 12 claims); *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 n.1 (2d Cir. 1993) ("Since Section 15 merely creates a derivative liability for violations of Sections 11 and 12, Section 13 applies to it as well.").  Section 13 first sets forth a one-year statute of *limitations* running from actual or constructive "discovery of the untrue statement or the omission."  15 U.S.C. § 77m.  It then

---

[4]  Throughout this brief, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted unless otherwise indicated.

[5]  Cites to "RBS SOF" refer to Defendants' Local Rule 56(a)(1) Statement of Undisputed Material Facts filed with this Motion.  Cites to Ex.__ are to the exhibits attached to the Declaration of Craig S. Waldman.

imposes a three-year statute of *repose*, providing in relevant part that "[i]n no event shall any such action be brought to enforce a liability created under [Section 11 and 12(a)(1)] more than three years after the security was bona fide offered to the public, or under [Section 12(a)(2)] more than three years after the sale."[6]  Section 13's "three-year period is an absolute limitation which applies whether or not the investor could have discovered the violation."  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 103 (2d Cir. 2004).

The Virginia and D.C. Blue Sky laws, under which FHFA pursues claims on behalf of Freddie Mac and Fannie Mae, respectively, are subject to similar restrictions.  Section 13.1-522(D) of the Virginia Securities Act states that "[n]o suit shall be maintained to enforce any liability created under this section unless brought within two years after the transaction upon which it is based."  Va. Code Ann. § 13.1-522(D); *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1305-06 (4th Cir. 1993).  Similarly, Section 31-5606.05 of the D.C. Securities Act requires claims to be brought "within one year after the discovery of the untrue statement or omission" but no later than "3 years after the contract of sale or purchase."  D.C. Code § 31.5606.05(f).  Finally, under Connecticut law, negligent misrepresentation claims are subject to a three-year statute of repose.  *See* Conn. Gen. Stat. Ann. § 52-577; *Valentine v. LaBow*, 897 A.2d 624, 631 (Conn. App. 2006) ("[S]ection 52-577 is a statute of repose in that it sets a fixed limit after which

---

[6]   For the RMBS at issue in this case, the "bona fide" offering date is, at the latest, the date of the prospectus supplement.  As RBS argued in its motion to dismiss (*see* MTD, Dkt. 45 at 17-18), for certain securitizations, and as to certain defendants, the bona fide offering date is the date of the registration statement, not the date of the later prospectus supplement.  *See, e.g.*, *Me. St. Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1165 n.8 (C.D. Cal. 2010) ("For MBS Offerings pursuant to shelf registration statements filed before December 1, 2005, the relevant 'offering' date is the effective date of the registration statement.").  In any event, all of FHFA's claims are untimely no matter which filing date is used, so for purposes of this motion, we assume that the later prospectus supplement filing date governs throughout.  RBS SOF ¶ 2.

the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues.").

The claims asserted in this action should therefore unquestionably be barred by the applicable statutes of repose.  Here, however, FHFA contends that a provision of the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. 4617(b)(12) (the "FHFA extender statute"), saves its claims by preempting these statutes of repose.[7]  The FHFA extender statute provides:

> **(12) Statute of limitations for actions brought by conservator or receiver.**
>
> **(A) In general**
>
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Agency as conservator or receiver shall be—
>
>> (i) in the case of any contract claim, the longer of—
>>
>>> (I) the 6-year period beginning on the date on which the claim accrues; or
>>>
>>> (II) the period applicable under State law; and
>>
>> (ii) in the case of any tort claim, the longer of—
>>
>>> (I) the 3-year period beginning on the date on which the claim accrues; or
>>>
>>> (II) the period applicable under State law.
>
> **(B) Determination of the date on which a claim accrues**
>
> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

---

[7]   The FHFA extender statute is one of three materially identical extender statutes that apply to certain claims brought by federal agencies in their capacities as conservators or receivers for troubled or insolvent financial institutions.  The other two extender statutes apply to the Federal Deposit Insurance Corporation ("FDIC") as conservator or receiver for failed banks (the "FDIC extender statute," 12 U.S.C. § 1821(d)(14)), and the National Credit Union Administration Board as conservator or liquidating agent for failed credit unions (the "NCUA Extender Statute, 12 U.S.C. § 1787(b)(14)), respectively, and were enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").

(i) the date of the appointment of the Agency as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 4617(b)(12).  The foregoing provisions set "the applicable statute of *limitations* with regard to any action brought by [FHFA]" as either three years for "any tort claim" or six years for "any contract claim," unless state law provides for a longer time period.  *Id.* § 4617(b)(12)(A).  They also provide that "the date on which the statute of *limitations* begins to run on any [such] claim . . . shall be the later of (i) the date of the appointment of [FHFA] as conservator or receiver; or (ii) the date on which the cause of action *accrues*."  *Id.* § 4617(b)(12)(B).[8]  The FHFA extender statute thus by its express terms alters only the "statute of limitations" for certain claims.  It does not alter, or even mention, any statute of repose, which "[u]nlike a statute of limitations, . . . is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit."  *P. Stolz*, 355 F.3d at 102.

RBS argued in its motion to dismiss that FHFA's claims were time-barred notwithstanding the FHFA extender statute because this statute does not preempt statutes of repose.  *See* MTD, Dkt. 45 at § 1.  On April 5, 2013, the Second Circuit decided *Federal Housing Finance Agency v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. 2013) ("*UBS*"), which held that the FHFA extender statute supplanted statutes of repose.  Thereafter, on September 30, 2013, the Court denied Defendants' motion to dismiss.  (Dkt. 202.)  A written ruling has not yet been issued, and Defendants' Answer has therefore not yet been served.

On June 9, 2014, the Supreme Court issued *Waldburger*.  *Waldburger* resolved a circuit split as to whether a similar extender statute contained in the Comprehensive Environmental

---

[8]  A subsequent provision of the FHFA extender statute also revives certain state law claims as to which "the statute of limitation" already has expired.  *Id*. § 4617(b)(13).  This provision does not apply to FHFA's claims in this case.

Response, Compensation, and Liability Act of 1980 (the "CERCLA extender statute")—which, like the FHFA extender statute, alters the "statute of limitations during which a civil action . . . may be brought" (42 U.S.C. § 9658(b)(2)) but says nothing about statutes of repose—preempts statutes of repose as well as statutes of limitations. *Compare Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co*., 419 F.3d 355, 362 (5th Cir. 2005) ("[T]he reach of the plain language of § 9658 does not extend to statutes of repose.") *with McDonald v. Sun Oil Co*., 548 F.3d 774, 783 (9th Cir. 2008) ("[I]t is evident that the term 'statute of limitations' in [§ 9658] was intended by Congress to include statutes of repose."). Reversing the decision of the Fourth Circuit below, and abrogating the Ninth Circuit's ruling in *McDonald*, the Supreme Court concluded that the CERCLA extender statute only applies to statutes of limitations, not to statutes of repose. The Supreme Court explained that, although "[s]tatutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts[,] . . . the time periods specified are measured from different points, . . . and the statutes seek to attain different purposes and objectives." *Waldburger*, 134 S. Ct. at 2182. Accordingly, the Supreme Court held that the CERCLA extender statute means what it says—it applies only to statutes of limitations, not statutes of repose, consistent with its text and structure.

The Supreme Court's holding cannot be reconciled with lower court decisions, including the Second Circuit's ruling in *UBS*, that have held that extender statutes referring only to a "statute of limitations" should be read to displace statutes of repose. To the contrary, "a faithful application of *Waldburger*'s analytical framework . . . compels the conclusion" that such extender statutes do not preempt statutes of repose. *Merrill*, slip op. at 15 (dismissing RMBS blue-sky claims against RBS and other defendants as barred by the applicable statute of repose). As noted above, as another federal court recently observed, "UBS's conclusion is irreconcilable

with the Supreme Court's interpretation of [the CERCLA extender statute] in *Waldburger* . . . ."
*Id.*, at 17. In short, for the reasons discussed below, *Waldburger* makes clear that the FHFA
extender statute does not displace the applicable repose periods, and that *UBS* is no longer good
law. Consequently, RBS's motion for summary judgment should be granted. In the alternative,
the Court should certify this issue for immediate interlocutory review pursuant to 28 U.S.C. §
1292(b).[9]

## **ARGUMENT**

Summary judgment is appropriate when the moving party has demonstrated that "no
genuine dispute as to any material fact" remains and the moving party is "entitled to judgment as
a matter of law." Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment
against a party who fails to make a showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear the burden of proof at trial."
*Emonds v. Newman Chrysler, Inc.*, 03-cv-1114 (AWT), 2005 WL 293493, at *1 (D. Conn. Feb.

---

[9]     As discussed further below, after deciding *Waldburger*, the Supreme Court ruled on a pending
petition for writ of *certiorari* concerning a ruling by the Tenth Circuit in *National Credit Union
Administration Board v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246 (10th Cir. 2013), which,
like *UBS*, had found that the NCUA extender statute displaced § 13's statute of repose. The Supreme
Court granted *certiorari*, vacated the Tenth Circuit's decision, and remanded "for further
consideration in light of *CTS Corp. v. Waldburger*." *See Nomura Home Equity Loan, Inc. v. Nat'l
Credit Union Admin. Bd.*, 134 S. Ct. 2818 (June 16, 2014). This "GVR" order reflected the Supreme
Court's determination that there was a "reasonable probability that the decision below rests upon a
premise that the lower court would reject if given the opportunity for further consideration." *Wellons
v. Hall*, 558 U.S. 220, 225 (2010); accord *Lawrence v. Chater*, 516 U.S. 163, 167 (1996). Despite
this, on August 19, 2014, the Tenth Circuit issued an order and opinion on remand reinstating its prior
ruling. *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, --- F.3d ----, 2014 WL
4069137 (10th Cir. Aug. 19, 2014). *Nomura*, of course, is not controlling in this Circuit, and the
opinion on remand fails to faithfully apply the analytical framework established in *Waldburger*,
instead sidestepping *Waldburger* by focusing on superficial distinctions between the CERCLA and
NCUA extender statutes. *Nomura* therefore provides no basis for this Court to deny RBS's motion;
should Plaintiff argue otherwise, RBS will further address *Nomura* on reply. At a minimum,
however, the fact that the first two federal courts to address these issues after *Waldburger* have
reached opposite conclusions demonstrates that "there is substantial ground for difference of
opinion," 28 U.S.C. § 1292(b), warranting interlocutory review in the event this Court does not
dismiss FHFA's claims. *See* Section III, *infra*.

4, 2005).   Summary judgment is proper when a plaintiff's claims are time-barred under the

applicable law.   *See Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492, 95 (2d Cir. 1995)

("Nothing that plaintiffs could have obtained in discovery would change the fact that their claim

was time-barred.").[10]

Here, RBS is entitled to summary judgment because (1) it is undisputed that unless the

FHFA extender statute preempts the applicable statutes of repose, FHFA's claims are time-

barred[11]; (2) *Waldburger* makes clear that the FHFA extender statute does not preempt statutes

of repose; and (3) this Court is no longer bound by *UBS*, because its rationale is no longer sound

in view of *Waldburger*.   *See Kazazian v. Bartlett & Bartlett LLP*, 2007 WL 4563909, at *1

(S.D.N.Y. Dec. 19, 2007) (district court bound to follow Supreme Court holding despite prior

contrary Second Circuit precedent).   As discussed in Section III below, in the event the Court

believes it remains bound by *UBS,* however, even after *Waldburger*, the Court should certify this

dispositive issue for immediate interlocutory appeal.

---

[10]   "Although a defendant's answer to the complaint typically precedes a motion for summary judgment, no party has to wait for a responsive pleading before filing a summary judgment motion." *Martilet Mgmt. Servs., Inc. v. Bailey*, 12 CIV. 6691 PAC, 2013 WL 5420966, at *2 (S.D.N.Y. Sept. 27, 2013); *see generally* Fed. R. Civ. P. 56(b) ("a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."). Moreover, "[a] motion for summary judgment may be made solely on the pleadings, when it is so made it is functionally the same as a motion to dismiss or a motion for judgment on the pleadings. Summary judgment procedure may be properly invoked for determination of a legal question." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968).

[11]   FHFA also seeks to rely on a tolling agreement between Fannie, RBS Securities, RBS Acceptance, RBS Financial Products and FAS Corp.  Ex. 2 (Am. Compl.) ¶¶ 179, 200, 215, 266, 281, 298; Ex. 10 (Tolling Agreement). This agreement does not bind any other defendant.  Even if it is deemed effective to toll the applicable statutes of repose (a question not addressed in this motion, and on which RBS reserves its rights) the agreement only applies to six Certificates (all purchased by Fannie) and only to certain defendants. RBS can address issues specific to the tolling agreement either after the Court decides that *Waldburger* requires a holding that the FHFA extender statute does not extend statutes of repose, or at such other time as the Court may direct.

I.    **THE FHFA EXTENDER STATUTE ALTERS ONLY STATUTES OF LIMITATIONS, NOT STATUTES OF REPOSE**

In *Waldburger*, the Supreme Court considered whether the reference to "statute of limitations" in the CERCLA extender statute should be construed to include statutes of repose, and held that this question turns first and foremost on the text of the statue, as well as its history, and its purposes.   As an initial matter, however, the Court in *Waldburger* considered the significant differences between statutes of limitations and statutes of repose.

Statutes of limitations and statutes of repose are "fundamentally different" in numerous respects.  *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. Apr. 13, 2011); *see also Waldburger*, 134 S. Ct. at 2182-83.  For example, a statute of limitations is a *procedural* limit on the plaintiff's ability to pursue a remedy, whereas a statute of repose is a *substantive* component of the plaintiff's underlying cause of action.  As the Second Circuit explained in construing Section 13:

> Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather *defines the right involved* in terms of the time allowed to bring suit. . . . [A] statute of repose does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action *from ever arising*.

*P. Stolz*, 355 F.3d at 102-03; *accord Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987) ("Statutes of repose are meant to be a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights.").

Additionally, statutes of limitations and statutes of repose typically run from different events.  A "statute of limitations . . . establishes the time period within which lawsuits may be commenced after a cause of action has accrued," which, as in the case of Section 13, typically is upon actual or constructive discovery of the claim.  *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 101 n.1 (2d Cir. 2013) (construing Section 13 of the 1933 Act), *cert. granted*,

134 S. Ct. 1515 (2014).  A statute of repose, by contrast, runs from the defendant's violation or another legislatively decreed date based on when a specific event occurs, such as, in the case of Section 13, the date the securities were offered to the public.  Accordingly, a statute of repose "extinguishes a cause of action after a fixed period of time *regardless* of when the cause of action accrued."  *Id.*; *accord City of Pontiac Gen. Empls.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 176 (2d Cir. 2011) (stating that whereas "a statute of limitations cannot begin to run until the plaintiff's claim has accrued," "a statute of repose . . . begins to run from the defendant's violation").  Indeed, "a statute of repose can prohibit a cause of action from coming into existence."  *Waldburger*, 134 S. Ct. at 2187; *see also Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627-28 (2d Cir. 1998) (a statute of repose "may bar commencement of an action even *before* the cause of action accrues.").

Statutes of limitations and statutes of repose also serve entirely different purposes.  Statutes of limitations are concerned with fairness to the plaintiff—which is why they typically do not run until actual or constructive discovery, and often can be tolled for equitable reasons.  Statutes of repose, by contrast, "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  *Waldburger*, 134 S. Ct. at 2183; *accord IndyMac MBS, Inc.*, 721 F.3d at 106 ("[S]tatutes of repose . . . run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not have, discovered that she has a cause of action. . . . [S]tatutes of repose create a *substantive* right to be free from liability after a legislatively-determined period of time."); *Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405, 409 (9th Cir. 2002) (explaining that a statute of repose "[i]s not concerned with the plaintiff's diligence; it is concerned with the *defendant's peace*").

Indeed, this case illustrates well the importance of statutes of repose.  While FHFA waited years to bring this lawsuit even after it was appointed as conservator in 2008, memories faded, documents have been destroyed, and potential evidence has become unavailable. Notwithstanding the extreme limitations in deposition discovery that have been imposed upon Defendants, virtually every witness who has been asked about individual transactions upon which FHFA's claims are predicated disclaimed any specific recollection.  Similarly, Freddie Mac, as a result of its document destruction policy, has destroyed potentially millions of pages of email communications during the critical time period, and has produced only a fraction of the documents produced on behalf of Fannie Mae, even though Freddie Mac was involved in the vast majority of at issue Securitizations.[12]  Hundreds of loan files from FHFA's 7,000-loan sample have yet to be located, and no doubt those that have been located will be missing critical documents, as experience in other RMBS cases (including those brought by FHFA) demonstrates.  Yet at the same time, FHFA has argued (and to a large degree, Judge Cote has incorrectly agreed) that Defendants' defenses must fail unless RBS can come forward with *specific* evidence that the GSEs had knowledge of the *specific* alleged misrepresentations with respect to the *specific* securitizations at issue.

Similarly, FHFA plans to take full advantage of the fact that loan files are missing documents and, if its expert submissions are similar to those it has relied upon in virtually all of its other companion cases, its experts will contend (improperly) that these loans must have been originated without the missing documents and are therefore "defective."  No underwriter will likely be available to explain the basis upon which loans were originated in response to FHFA's

---

[12]   *See* Defendants' Mot. to Modify Coordination Order to Provide Defendants with a Reasonable Opportunity for Fact Depositions, Dkt. 165, at 9-10 (June 5, 2013).

claims that originators systematically abandoned underwriting guidelines.  Defendants, in short, have been substantially prejudiced by FHFA's extensive delay.  Yet, Congress (in connection with the federal Securities Act claims), and the legislatures of Virginia and the District of Columbia (in connection with the blue sky claims) as well as that of Connecticut (in connection with the negligent misrepresentation claims), have each determined that parties such as the RBS Defendants have a substantive right to have been free of liability after the repose periods expired without the GSEs or FHFA having asserted any claims against them.  These policy judgments, reflected in state and federal statutes, should not lightly be disregarded.

In *Waldburger*, after discussing these fundamental differences between statutes of limitations and statutes of repose, the Court considered the text of the CERCLA extender statute, Congress's understanding of the distinction between statutes of limitations and statutes of repose at the time of enactment, and the structure and purpose of the extender statute at issue.  As discussed further below, *Waldburger* compels summary judgment for Defendants, because the reasoning employed by the Court to conclude that the CERCLA extender statute did not supplant statutes of repose applies equally to the FHFA extender statute.

> A.    **The Plain Text of the FHFA Extender Statute Alters Only Statutes of Limitations, not Statutes of Repose**

Turning first to the text of the statute, the Supreme Court held in *Waldburger* that three features of the CERCLA extender statute's text demonstrate that that statute does not alter statutes of repose.  First, the CERCLA extender statute's text refers only to the statute of limitations and not to statutes of repose.  Second, the CERCLA extender statute incorporates concepts of accrual which have no applicability to statutes of repose.  Third, the CERCLA

extender statute refers to the "statute of limitations" in the singular instead of in the plural. Those same features are just as present on the face of the FHFA extender statute.[13]

### 1.        The FHFA Extender Statute Does Not Mention Statutes Of Repose

First, the Court found it "instructive" that the CERCLA extender statute "uses the term 'statute of limitations' four times (not including the caption), but not the term 'statute of repose.'" *Waldburger*, 134 S. Ct. at 2185.  The FHFA extender statute and its related revival provision likewise use the term "statute of limitations" or "statute of limitation" four times (not counting the caption), but never use the term "statute of repose."  12 U.S.C. § 4617(b)(12)(A), (b)(12)(B), (13).  That a statute explicitly speaks in terms of the statute of limitations, not statutes of repose, demonstrates that it alters only the former, not the latter.  *See Burlington*, 419 F.3d at 362 (a federal statute that expressly preempts only statutes of limitations does not also preempt statutes of repose, because "the differences between statutes of limitations and statutes of repose are substantive, not merely semantic"); *Merrill*, slip op. at 10 ("If Congress had intended to preempt state statutes of repose, it certainly could have said so; its failure to do so is therefore an important indication of its intent, unless Congress has elsewhere expressed a specific desire to include statutes of repose within the sweep of the FDIC extender statute.") (citing *Waldburger*, 134 S. Ct. at 2185-86).

---

[13]    *Waldburger*'s directive to interpret extender statutes by reference to their text and structure also underscores the correctness of several related arguments RBS has previously advanced in this case: (i) the FHFA extender statute does not apply to federal claims, given that the extender provisions and the related revival provisions reference only state law claims and contract and tort claims; (ii) the FHFA extender statute does not apply to statutory claims, given that, again, it references only contract and tort claims; (iii) in any event, the FHFA extender statute does not displace the statutes of repose applicable to FHFA's federal and state securities claims, given that securities claims are *sui generis* (sounding neither in contract nor in tort), and given that these statutes of repose rest on policy judgments that are unique to the securities context.  RBS incorporates by reference the arguments it previously presented on these points, and urges the Court to grant summary judgment on these bases as well.  (*See* MTD, Dkt. 45, at 14-17; MTD Reply, Dkt. 57, at 3-6.)

This same textual analysis has been applied by other courts, even before the Supreme Court's ruling in *Waldburger*. *See Kennedy v. U.S. Veterans Admin.*, No. 2:11-cv-150, 2011 WL 6296732, at *3 (S.D. Ohio Dec. 16, 2011) ("[Congress'] purposeful enactment of an applicable [federal] statute of limitations [in the Federal Tort Claims Act] that rejected application of state limitations periods without similar[ly] . . . rejecti[ng] . . . state . . . statute[s] of repose weighs against Plaintiff's argument that the federal statute of limitation preempts the state statute of repose.") (*rev'd on another ground*, 526 F. App'x 450 (6th Cir. 2013)); *Resolution Trust Corp. v. Olson*, 768 F. Supp. 283, 285 (D. Ariz. 1991) (The FDIC Extender Statute "deal[s] only with procedural statutes of limitations and not substantive statutes of repose."); Tentative Ruling, *NCUA v. RBS Sec., Inc.*, 11-CV-5887-GW (C.D. Cal. Dec. 19, 2011) (Ex. 5) (confirmed in Order dated Feb. 26, 2014 (Ex. 6)) (The NCUA Extender Statute "plainly refers to statutes of limitation.  It makes no mention whatsoever of statutes of repose."); Tentative Ruling, *NCUA v. Goldman Sachs & Co.*, 11-CV-6521-GW (C.D. Cal. Mar. 15, 2012) (Ex. 7) (same; confirmed in Order dated Sept. 4, 2012 (Ex. 8)), *appeal docketed*, No. 14-55309 (9th. Cir. Feb. 26, 2014). Those courts that have reached contrary conclusions have done so in reliance on reasoning and precedents rejected by the Supreme Court in *Waldburger*.[14]

---

[14] The district court ruling affirmed by the now-vacated Tenth Circuit opinion in *Nomura*, for example, relied on what it saw as general "conflation" of the two terms in legal usage, and on *McDonald*'s (now abrogated) holding that "the term statute of limitations in [the CERCLA extender statute] also means 'statute of repose.'"  *NCUA v. RBS Secs. Inc.*, 900 F. Supp. 2d 1222, 1241 (D. Kan. 2012). Similarly, the court in *FHFA v. Countrywide Financial Corp.* found that "*McDonald* is controlling as to the Ninth Circuit's approach in interpreting statutes that refer to periods of limitation," and rejected defendants' arguments against application of the FHFA Extender Statute as "ignor[ing] the relevant inquiry of *McDonald*."  900 F. Supp. 2d 1055, 1065 (C.D. Cal. 2012).  Moreover, Judge Pfaelzer subsequently revisited the issue and concluded (still applying *McDonald*) that the presumption against preemption required a finding that the FDIC Extender Statute "*does not preempt*" state statutes of repose.  *See FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp.*, 966 F. Supp. 2d 1018, 1030 (C.D. Cal. 2013) ("*FDIC-Guaranty I*").  On reconsideration, Judge Pfaelzer reaffirmed this ruling and noted that her revised analysis may "require[ ] reconsideration of" her earlier ruling in

*(footnote cont. next page)*

## 2. The FHFA Extender Statute Employs Accrual Concepts That Pertain Only To Statutes Of Limitations

Second, the Supreme Court reasoned that the CERCLA extender statute could only refer to statutes of limitations, not statutes of repose, because the statute's operation was tied to the concept of "accrual." The CERCLA extender statute refers to "'the period' during which a 'civil action' under state law 'may be brought,'" language that "presupposes that a covered civil action exists," *i.e.*, that it has accrued. *Waldburger*, 134 S. Ct. at 2187. By contrast, the Court explained, "[a] statute of repose . . . is not related to the accrual of any cause of action," and "is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *Id.* at 2192.[15] Instead, a statute of repose simply "mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued." *Id.* at 2187. Therefore, the Court found that CERCLA's reference to when an action "may be brought" implied that an action existed and had accrued, and demonstrated that the statute did not apply to statutes of repose. *Id.*

This reasoning applies with even greater force here, because the FHFA extender statute explicitly ties its extension of time to when a cause of action "accrues." *See Merrill*, slip op. at 10 ("[L]ike § 9658, the FDIC Extender Statute is tied to the concept of accrual."). Specifically, the FHFA extender statute provides that the limitations period shall be the longer of

---

*FDIC-Guaranty I.  FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp.*, 966 F. Supp. 2d 1031, 1045 (C.D. Cal. 2013) ("*FDIC-Guaranty II*").

[15] *See also* Black's Law Dictionary, "statute of repose" (9th ed. 2009) ("Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted."); *City of Pontiac*, 637 F.3d at 176 (2d Cir. 2011) ("Unlike a statute of repose, which begins to run from the defendant's violation," a "statute of limitations cannot begin to run until the plaintiff's claim has *accrued*."); *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 5:04-CV-047-C 2004 WL 1926322, at *10 (N.D. Tex. Aug. 27, 2004) ("For statutes of repose, the accrual date is irrelevant.").

either the three- or six-year period "beginning on the date the claim *accrues*" or the period applicable under state law.  12 U.S.C. § 4617(b)(12)(A)(i), (ii).  It then provides, in a subsection entitled, "Determination of the date on which a claim *accrues*," that "the date on which the statute of limitations *begins to run* shall be" the date the FHFA becomes conservator or "the date on which the cause of action *accrues*."  *Id.* § 4617(b)(12)(B).  As a basic textual matter, a statute that presupposes a "claim" and that operates by postponing its "accrual"—as does the FHFA extender statute—does not implicate repose periods, which "can run to completion even before injury has occurred to a potential plaintiff, extinguishing a cause of action before it even accrues."  *P. Stolz*, 355 F.3d at 103.  Thus, under *Waldburger*, statutory language presupposing the existence of a cause of action and incorporating concepts of accrual—present both in the CERCLA extender statute at issue in *Waldburger*, and more explicitly in the FHFA extender statute at issue here—refers to a statute of limitations, not a statute of repose.  *See Merrill*, slip op. at 11 ("[T]he statutory focus on claim accrual suggests the [FDIC extender] statute should be 'read to encompass only statutes of limitations.'") (quoting *Waldburger*, 134 S. Ct. at 2187); *cf. FHFA v. Countrywide*, 900 F. Supp. 2d at 1064 (recognizing that the use of accrual concepts is "evidence that [the FHFA Extender Statute] applies only to limitation").

### 3.  A Singular "Statute Of Limitation" Does Not Supplant Both Statutes Of Limitation And Statutes Of Repose

Third, the Supreme Court observed that the CERCLA extender statute's "text . . . includes language describing the covered period in the *singular*."  *Waldburger*, 134 S. Ct. at 2186-87.  As the Court noted, "[t]he statute uses the terms '*the* applicable limitations *period*,' 'such *period* shall commence,' and '*the statute* of limitations established under State law.'"  *Id.* at 1285.  The Court concluded that "[t]his would be an awkward way to mandate the pre-emption of two different time periods [limitations and repose] with two different purposes."  *Id.* at 2187.

18

The FHFA extender statute's language is virtually identical. *See Merrill*, slip op. at 11 ("[T]he FDIC Extender Statute is also nearly identical to § 9658 in its repeated references to a singular time period."). It refers in the singular to "*the* applicable *statute* of limitations," "*the date* on which *the statute* of limitations begins to run," and "*the period* applicable under State law." 12 U.S.C. § 4617(b)(12)(A), (b)(12)(A)(i)(II), (b)(12)(A)(ii)(II), (b)(12)(B). As in *Waldburger*, such language "would be an awkward way" for Congress to refer to two different time periods, serving two different purposes, with two different starting and ending dates. *Waldburger*, 134 S. Ct. at 2186-87.

### B. Congress Understands the Distinction Between Statutes of Limitations and Statutes of Repose, and Did Not Choose to Preempt Statutes of Repose

The Supreme Court's textual analysis in *Waldburger* rested in part on its conclusion that the differences between statutes of limitations and statutes of repose were understood when the CERCLA extender statute was enacted in 1986, such that Congress' failure to reference "statutes of repose" reflected a deliberate decision not to "exercise the full scope of its pre-emption power." 134 S. Ct. at 2186. The Court acknowledged that, in the years leading up to 1986, some authorities had described the two types of statutes as "equivalent." *Id.* at 2185. The Court concluded, however, that it is "apparent that the distinction between statutes of limitations and statutes of repose was understood by some courts and scholars before 1986." *Id.* (citing Restatement (Second) of Torts § 899, cmt. g (1977)). In addition, based on reports in *1982* from a Senate Committee that recommended revisions to both "statutes of limitations" *and* "statutes of repose," the Court remarked that "[t]he scholars and professionals who were discussing this matter (and indeed were advising Congress) knew of a clear distinction between the two." *Id.* at 2186.

Indeed, in construing the FDIC extender statute, which was enacted in 1989—*19 years* before HERA—another court recently found that "an electronic search of the Congressional Record from 1985 until the enactment of FIRREA reveals at least forty-four separate uses of the phrase 'statute of repose' across twenty-seven different statements by members of Congress," a number that rises to "fifty-seven separate mentions . . . across thirty different statements" if one searches for "'statute of repose' combined with closely related phrases such as 'statute of limitations and repose.'" *FDIC-Guaranty II*, 966 F. Supp. 2d at 1039 & n.3.  As the court recognized, "the Congressional Record both prior to and contemporaneous with the enactment of FIRREA suggest[s] that Congress understood the meaning of the term 'statute of repose' but nevertheless failed to use it in the extender statute." *FDIC-Guaranty II*, 966 F. Supp. 2d at 1037; *see also Merrill*, slip op. at 13-14 ("[T]he understanding Congress had of statutes of limitations and statutes of repose at the time CERCLA was passed in 1986 can fairly be imported to Congress three years later when it enacted the FDIC Extender Statute.").

The "clear distinction" between statutes of repose and statutes of limitations was, of course, even better understood two decades later, when Congress passed HERA in 2008.  By that time, the "modern, more precise usage" of the term "statute of repose" as a separate and distinct statutory period was "predominant." *Waldburger*, 134 S. Ct. at 2186.  For example, in a 1991 decision, the Supreme Court made clear that although statutes of limitations are susceptible to equitable tolling, statutes of repose are not.  *Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).  Thereafter, Congress passed or proposed no fewer than a dozen laws containing explicit distinctions between statutes of limitations and statutes of repose—well before HERA was enacted in September 2008 and shortly thereafter.  For example, a health care bill proposed months after HERA's passage contains separate provisions for

"Statute of Limitations" and "Statute of Repose." Medical Justice Act of 2009, H.R. 1468 111th Cong. § 14 (2009). In 1996, Congress passed a products liability bill (later vetoed by President Clinton) that established a two-year "statute of limitations" and a separate fifteen-year "statute of repose." H.R. Rep. No. 104-481, at 7, 9 (1996). Similar examples abound of proposed legislation and legislative history that explicitly distinguish between statutes of limitations and statutes of repose.[16]

Congress thus well understood by the time it enacted HERA that statutes of limitations and statutes of repose are different. It knew how to displace statutes of repose if it wanted to do so. Because "Congress did not make the . . . distinction [in the statute], it is proper to conclude that Congress did not exercise the full scope of its pre-emption power" and left statutes of repose untouched. *Waldburger*, 134 S. Ct. at 2186.

---

[16] *See* Ex. 9 (Brief of Amicus Curiae Securities Industry and Financial Markets Association in Support of Appellants and in Support of Reversal (Addendum), *UBS*, No. 12-3207 (2d Cir. Sept. 25, 2012) (citing H.R. 2563, 111th Cong. § 2 (2009) (Ex. DD); H.R. 3905, 105th Cong. § 502 (1998); S. 5, 105th Cong. § 106 (1997); H.R. 896, 112 Cong. § 14 (2011); H.R. 1608, 111th Cong. § 2 (2009); H.R. 940, 107th Cong. § 2 (2001); S. 2546, 105th Cong. § 107 (1998); S. 1415, 105th Cong. §§ 2, 704 (c)(1) (1998); S. 8, 105th Cong. § 506(i) 1998; S. 648, 105th Cong. § 106(b) (1997); H.R. 3000, 105th Cong. § 206(e) (1997); H.R. 364, 112 Cong. § 313 (2011); 147 Cong. Rec. H5213 (Aug. 2, 2001); 146 Cong. Rec. H463 (Feb. 16, 2000); H.R. Rep. No. 106-782, at 6 (2000); H.R. 4375, 105th Cong. § 2 (1998); 144 Cong. Rec. S7526 (July 7, 1998); S. Rep. No. 105-379, at 16-17 (1998); S. Rep. No. 105-32, at 38 (1997); H.R. Rep. No. 104-879, at 40 (1997); 142 Cong. Rec. H4756 (May 9, 1996); 142 Cong. Rec. H3184 (Mar. 29, 1996); 142 Cong. Rec. S2553 (Mar. 21, 996); 142 Cong. Rec. S2341 (Mar. 20, 1996); 141 Cong. Rec. S10185 (July 18, 1995); 141 Cong. Rec. S6373 (May 10, 1995); 141 Cong. Rec. S11244 (Apr. 26, 1995); 141 Cong. Rec. S1117 (Apr. 24, 1995); S. Rep. No. 104-83, at 28 (1995); H.R. Rep. No. 103-883, at 72 (1995); 140 Cong. Rec. S7746 (June 28, 1994); S. Rep. No. 103-203, at 48 (1993); Pub. L. No. 102-339 § 3(b), 106 Stat. 869 (Aug. 11, 1992); 137 Cong. Rec. S25217 (Oct. 3, 1991); 137 Cong. Rec. S5915 (Mar. 13, 1991); S. Rep. No. 102-215, at 16 (1991); 134 Cong. Rec. S28337 (Oct. 5, 1998); 133 Cong. Rec. S7878 (Apr. 2, 1987); 132 Cong. Rec. S25095 (Sept. 22, 1986); 132 Cong. Rec. S23721 (Sept. 17, 1986); 132 Cong. Rec. S10304 (May 12, 1986); 132 Cong. Rec. S9483 (May 6, 1986); 131 Cong. Rec. S217 (Jan. 3, 1985)).

### C.   HERA's Structure and Purpose Further Demonstrate that the FHFA Extender Statute Alters Only Statutes of Limitations, not Statutes of Repose

FHFA has argued that, regardless of what the text of the statute *says*, it should be *construed* in favor of FHFA because it was designed "to provide FHFA more time to decide whether and how to pursue any claims it inherited as the GSEs' newly-appointed conservator," and "[t]his purpose would be ill-served if HERA were interpreted to replace only limitations periods, but not repose periods."  MTD Opp., Dkt. 51, at 20.  The Supreme Court rejected substantially similar arguments in *Waldburger*.  *See Merrill*, slip op. at 14 ("[T]he FDIC contends the FDIC Extender Provision must be interpreted to preempt state statutes of repose in order to ensure the FDIC has adequate time to investigate and bring claims inherited from failed banks.  This is the same basic goal-oriented reasoning rejected by *Waldburger*.").

First, the Court held that it was "error" for the Fourth Circuit to have "invok[ed] the proposition that remedial statutes should be interpreted in a liberal manner," because this cannot be "treated . . . as a substitute for a conclusion grounded in the statute's text and structure." *Waldburger*, 134 S. Ct. at 2185.  As the Court explained, "almost every statute might be described as remedial in the sense that all statutes are designed to remedy some problem," but "no legislation pursues its purposes at all costs."  *Id.*; *see also, e.g.*, *Norfolk So. R. Co. v. Sorrell*, 549 U.S. 158, 171 (2007) ("[I]t frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law.").  The Court's opinion makes clear that the FHFA extender statute's general purpose is not a basis for courts to construe it liberally or extend it beyond what its text provides.

The Court also rejected the argument that "pre-emption of statutes of repose advances [the CERCLA extender statute's] purpose [of] help[ing] plaintiffs bring tort actions caused by toxic contaminants."  *Waldburger*, 134 S. Ct. at 2188.  The Court found that this argument

located the legislative intent at too high a "level of generality," noting that CERCLA "does not provide a complete remedial framework" and "leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions." *Id.* The Court concluded that "in light of Congress' decision to leave those many areas of state law untouched," statutes of repose do not "pose an unacceptable obstacle to CERCLA's purposes." *Id.* Here, FHFA has urged a similarly flawed reading. The FHFA extender statute is structurally and functionally similar to the CERCLA extender statute; it "does not provide a complete remedial framework" but instead leaves "untouched" all substantive and procedural rules applicable to claims brought by FHFA, *id.* at 2188, extending only the date on which tort and contract claims "accrue[]" and the length of the statute of limitations applicable to such claims running from such accrual. 12 U.S.C. § 4617(b)(12)(A)(i), (b)(12)(A)(ii), (b)(12)(B). As in *Waldburger*, "in light of Congress' decision to leave those many areas of state law untouched," statutes of repose do not "pose an unacceptable obstacle" to HERA's purposes. 134 S. Ct. at 2188; *see Merrill*, slip op. at 15 ("FIRREA, like CERCLA, 'does not provide a complete remedial framework,'" but is instead "part of a broader network of laws, including large amounts of state law, used to advance the goals of the FDIC. . . . As in *Waldburger*, then, the case for preemption here is 'particularly weak.'").

Moreover, FHFA's argument that the purpose of the FHFA extender statute is to give FHFA more time to bring claims merely confirms that the statute applies to statutes of limitation but not repose. This purpose is identical to the purpose of other legal doctrines that provide plaintiffs with relief from statutes of limitations but not statutes of repose (*e.g.*, the "discovery rule" and "equitable tolling"). It, however, has nothing to do with a statute of *repose*, which, as

noted, is not concerned with fairness to the plaintiff but rather reflects "a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Waldburger*, 134 S. Ct. at 2183; *accord IndyMac MBS, Inc.*, 721 F.3d at 106; *Underwood Cotton Co., Inc.*, 288 F.3d at 409.

Fundamentally, FHFA's "statutory purpose" arguments are foreclosed by the basic point that "Congressional intent is discerned primarily from the statutory *text*." *Waldburger*, 134 S. Ct. at 2185. It is the *text* that defines the means by which Congress sought to further a statute's purported purpose. And it is the *text* that delimits what Congress was *not* willing to do, such as displace the "substantive definition[s] of rights" embodied in statutes of repose. *Goad*, 831 F.2d at 511.

### D.     The Presumption Against Preemption Further Supports RBS's Construction Of The FHFA Extender Statute

As discussed above, the text and structure of the FHFA extender statute plainly demonstrate that it does not preempt statutes of repose. With respect to FHFA's state-law claims, this conclusion, like that of the Supreme Court in *Waldburger*, draws further support from the presumption against preemption. As the Supreme Court explained, while "Congressional intent is discerned primarily from the statutory text," "were the Court to adopt a presumption to help resolve ambiguity, substantial support also exists for the proposition that the States' coordinate role in government counsels against reading federal laws . . . to restrict the States' sovereign capacity to regulate." *Waldburger*, 134 S. Ct. 2185. Indeed, "because the States are independent sovereigns in our federal system," courts "assum[e] that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). As a result, "[w]hen the text of . . . [a] pre-emption clause is susceptible of more than one plausible

24

reading, courts ordinarily accept the reading that disfavors pre-emption." *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008). "The presumption [against preemption] has greatest force when Congress legislates in an area traditionally governed by the States' police powers." *Waldburger*, 134 S. Ct. at 2189 (Opinion of Kennedy, J.)[17]; *see also Altria*, 555 U.S. at 77 ("the historic police powers of the States" are "not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.").

"States have traditionally regulated intrastate securities transactions, and th[e Supreme] Court has upheld the authority of States to enact 'blue-sky' laws against Commerce Clause challenges on several occasions." *Edgar v. MITE Corp.*, 457 U.S. 624, 641 (1982). Tort law, which forms the basis of FHFA's negligent misrepresentation claim, is similarly an "area[] traditionally of core concern to the states." *Burke v. Dow Chem. Co.*, 797 F. Supp. 1128, 1136 (E.D.N.Y. 1992). Because the FHFA extender statute preempts areas of traditional state authority, the scope of its preemptive power must be given "a narrow interpretation." *See Medtronic*, 518 U.S. at 484 (even when "interpreting a statutory provision that expressly pre-empts state law" a court "must nonetheless 'identify the domain expressly preempted' by that language.") (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992)); *see also Burke* 797 F. Supp. at 1137 ("[W]here Congress has provided an express preemption clause, the presumption against preemption requires courts to read the clause narrowly.").

---

[17]  Seven Justices joined Justice Kennedy's majority opinion, but four of these Justices did not join Justice Kennedy's discussion of the presumption against preemption because they hold the opinion that the presumption should be narrowed or discarded. *See Waldburger*, 134 S. Ct. at 1289 ("For the reasons given in the balance of the opinion, ordinary principles of statutory construction demonstrate that 42 U.S.C. § 9658 pre-empts only statutes of limitation and not statutes of repose.") (opinion of Scalia, J., concurring in part and concurring in the judgment). The presumption, however, still commands the support of a majority of the Court and remains binding on the federal courts. *See, e.g.*, *Bond v. United States*, 134 S. Ct. 2077, 2088 (2014) ("It has long been settled" that "we presume federal statutes do not . . . preempt state law").

Indeed, before *Waldburger* was decided, another federal court—which, at the time, was effectively compelled to find textual ambiguity under Ninth Circuit precedent abrogated by *Waldburger*—relied on the presumption against preemption to dismiss similar RMBS claims, finding that the materially identical FDIC extender statute did not preempt state statutes of repose. *See FDIC-Guaranty I,* 966 F. Supp. 2d 1018 (C.D. Cal. 2013); *FDIC-Guaranty II*, 966 F. Supp. 2d 1031. The court found no express preemption of state statutes of repose because the text was ambiguous and the legislative history "neither mentions statutes of repose nor implies a concern for their effects." *Guaranty I*, 966 F. Supp. 2d at 1026-27. Next, the court easily concluded that field preemption did not apply—"FIRREA's extender provision clearly leaves room for the operation of state law by recognizing state causes of action sounding in contract and tort." *Id.* at 1027. Finally, the court rejected the argument that the "statute of repose presents an obstacle to the accomplishment of FIRREA's purpose," and found no conflict preemption.[18] *Id.* at 1030. The court held that "FIRREA's core purpose is to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks," and while this purpose is furthered by enhancing litigation recoveries, "the Supreme Court [in *O'Melveny*] . . . has explicitly held that FIRREA's cost-recovery objective is insufficient to preempt state law." *Id.* at 1029.[19]

---

[18] The other form of conflict preemption—impossibility preemption—is inapposite. Impossibility preemption applies where it is "impossible . . . to comply with both state and federal requirements," *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990), and FHFA is clearly not put into "noncompliance" with HERA merely by bringing a time-barred claim.

[19] In denying the FDIC's motion for reconsideration, the court reaffirmed that "preemption is the proper framework for analyzing FIRREA's Extender Provision," so as to avoid "upsetting the usual constitutional balance of federal and state powers without [ ] careful judicial scrutiny," and rejected the FDIC's "attempt to minimize the federalism concerns implicated here," noting that the FDIC was

*(footnote cont. next page)*

Confronting the same issue after *Waldburger*, the *Merrill* court found that application of the presumption was unnecessary because the FDIC extender statute unambiguously applied only to statutes of limitations.  However, that court agreed that, "to the extent the presumption does apply, it counsels against preemption" of state statutes of repose.  *Merrill*, slip op. at 17 n.9; *see also id.* at 14 n.6 (agreeing with *Guaranty*'s finding of no conflict preemption).

The conservatorship provisions of HERA were adapted from FIRREA, and the provisions on which FHFA has relied to support its "statutory purpose" arguments are identical to FIRREA's.  *See, e.g.*, 12 U.S.C. § 1821(d)(2)(D) (FIRREA); *id.* § 4617(b)(2)(D) (HERA) (authorizing FDIC and FHFA respectively to "take such action as may be (i) necessary to put the [institution] in a sound and solvent condition; and (ii) appropriate to carry on the business of the [institution] and preserve and conserve the assets and property of the [institution]").  The sound preemption analyses of the *Guaranty* and *Merrill* courts are therefore squarely applicable to this case.  *See, e.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (interpretation of statutory language "applies with equal force" to language in a later statute "derived *in haec verba*" from the earlier statute); *In re Federal Home Loan Mortg. Corp. Deriv. Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009) (The "provisions [of FIRREA] regarding the powers of federal bank receivers and conservators are substantially identical to those of HERA.").

In short, the presumption against preemption provides that "when the text of a pre-emption clause is susceptible of more than one plausible reading," courts should "accept the reading that disfavors pre-emption." *Altria*, 555 U.S. at 77.  Assuming any ambiguity as to the scope of the FHFA extender statute remains after *Waldburger* (as discussed above, it does not),

---

in fact seeking the "extraordinary power" to freely "trump state-created laws extinguishing [a] cause of action." *Guaranty II*, 966 F. Supp. 2d at 1041-43.

*Waldburger*'s textual analysis establishes, at the very least, that a reading of the FHFA extender statute which excludes statutes of repose is "plausible."  Accordingly, the presumption against preemption further militates against reading the FHFA extender statute—which, again, makes no reference to statutes of repose—so broadly as to preempt the statutes of repose in the Virginia and DC Securities Acts, or the Connecticut statute of repose applicable to FHFA's negligent misrepresentation claim.[20]  *See Merrill*, slip op. at 17 & n.9 ("To the extent any of [plaintiff's] authorities suggest the FDIC Extender Provision is at least ambiguous, *Waldburger* mandates the narrower interpretation—holding state statutes of repose are not preempted—must control.").

## II.   WALDBURGER ABROGATES THE SECOND CIRCUIT'S RULING IN UBS

In *UBS*, the Second Circuit held that the FHFA extender statute applied to statutes of repose.  *UBS* is no longer good law in light of *Waldburger* and therefore is not binding here; it is axiomatic that "a decision of the Second Circuit is [not] binding [if] it has been called into question by an intervening Supreme Court decision," including if "its rationale is overruled, implicitly or expressly, by the Supreme Court."  *In re S. African Apartheid Litig.*, Nos. 02 MDL 1499(SAS) etc., 2014 WL 1569423, at *4 (S.D.N.Y. Apr. 17, 2014); *accord Sikhs for Justice, Inc. v. Indian Nat'l Cong. Party*, No. 10 Civ. 2940, 2014 WL 1683798, at *5 (S.D.N.Y. Apr. 25, 2014).  Here, "*UBS*'s conclusion is irreconcilable with . . . *Waldburger*, and it is ultimately the Supreme Court's analysis which must control."  *Merrill*, slip op. at 17.

---

[20] As RBS argued in its motion to dismiss (Dkt. No. 45, MTD at 17), a similar presumption exists against reading federal statutes (such as the FHFA extender statute) as implicitly repealing other federal laws (such as Section 13 of the 1933 Act).  *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 664 (2007) (implied repeals or amendments of federal statutes are disfavored).  This analogous presumption provides an additional basis for granting summary judgment to RBS on FHFA's 1933 Act claims as well.

*First*, *UBS* reasoned that HERA's extension of "the applicable statute of limitations" indicated that "Congress intended one statute of limitations—§ 4617(b)(12) of HERA—to apply to all claims brought by FHFA as conservator."  *UBS*, 712 F.3d at 141-42, 143 (emphasis omitted).  The Supreme Court reached the opposite conclusion, holding that references in CERCLA to "the applicable limitations period" mean that the statute alters just one period, not "two different time periods with two different purposes."  *Waldburger*, 134 S. Ct. at 2187.

*Second*, *UBS* reasoned that the fact that HERA provides "'*the*' statute of limitations for '*any* action' brought by FHFA as conservator" precluded "the possibility that some other limitations period [*i.e.*, a statute of repose] might apply."  712 F.3d at 141-42.  The respondent in *Waldburger* similarly relied on the CERCLA extender statute's stated application to "any action" as evidence that Congress intended it to supplant statutes of repose.  Brief for Respondents in *Waldburger* at 24, *available at* 2014 WL 1260425, at *20-21 ("Section 9658(a) applies broadly to 'any action,'" and "comprehensively addresses all state limitations periods," which "strongly suggests that Congress did not intend [to] carve out" statutes of repose.).  The Supreme Court, of course, disagreed; in fact, the Court read the CERCLA extender statute's reference to an "action" as supporting the *exclusion* of statutes of repose, since statutes of repose extinguish "actions" entirely, leaving no "action" to extend.  *Waldburger*, 134 S. Ct. at 2187.

*Third*, *UBS* reasoned that statutes of limitations and statutes of repose are only "distinct in theory," listing various instances where the terms have been used interchangeably.  *UBS*, 712 F.3d at 142-43.  The Supreme Court, however, looked at the same basic historical record and explained at length how the differences are not just theoretical, but substantive and fundamental. The Court, while noting that the term "statute of limitations" sometimes has been used loosely, ultimately concluded that "the concept that statutes of repose and statutes of limitations are

distinct was well enough established" by the time Congress enacted the CERCLA extender statute in 1986. *Waldburger*, 134 S. Ct. at 2186. As set out above, those distinctions were even more entrenched by the time Congress enacted HERA in 2008, 22 years later.

*Fourth*, *UBS* repeatedly relied on its description of HERA's purpose as "giv[ing] FHFA the time to investigate and develop potential claims" and "to restore Fannie Mae and Freddie Mac to financial stability." *UBS*, 712 F.3d at 142. While *Waldburger* emphasized discerning congressional intent "primarily from the statutory text," *Waldburger* at 2185, *UBS* was premised on a broad conception of the statute's purpose. The *UBS* panel reasoned:

> Congress enacted HERA and created FHFA in response to the housing and economic crisis, precisely because it wanted to address the dire financial condition of Fannie Mae and Freddie Mac. As HERA makes clear, Congress intended FHFA to take action to "collect all obligations and money due" to the GSEs, to restore them to a "sound and solvent condition." . . . Of course, the collapse of the mortgage-backed securities market was a major cause of the GSEs' financial predicament, and it must have been evident to Congress when it was enacting HERA that FHFA would have to consider potential claims under the federal securities and state Blue Sky laws. It would have made no sense for Congress to have carved out securities claims from the ambit of the extender statute, as doing so would have undermined Congress's intent to restore Fannie Mae and Freddie Mac to financial stability.

*UBS*, 712 F.3d at 142. This reasoning—that the result that benefits the party seeking additional time to bring claims is, for that reason, the better reading of the statute—cannot be squared with the text-focused analytical approach required by *Waldburger*.

Indeed, the Supreme Court found such a "which party does the statute favor" approach to be particularly inappropriate where a statute operates only by creating a limited exception to generally applicable state law rather than a "complete remedial framework." *Waldburger*, 134 S. Ct. at 2188. This is as true here as in *Waldburger* itself, since the FHFA extender statute simply creates a limited exception to the general rule that when a government agency like FHFA brings claims as conservator or receiver, it "[stands] in the shoes of the insolvent [institution] to work

out its claims under state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994). In such circumstances, *Waldburger* noted that the legislative purpose of the extender statute is not the only relevant policy at issue, as statutes of repose "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Waldburger*, 134 S. Ct. at 2183; *see also id.* ("Statutes of repose reflect legislative decisions that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability."); *accord Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1435 (10th Cir. 1991) ("The legislative history in 1934 makes it pellucid that Congress included statutes of repose [in § 13 for] fear that lingering liabilities would disrupt normal business and facilitate false claims. It was understood that the three-year rule was to be absolute."). In the face of such competing legislative purposes, *Waldburger* requires courts to resolve the issue by looking to "the statute's text and structure," rather than by making a policy choice as to which purpose should yield. 134 S. Ct. at 2185. *UBS* cannot be reconciled with this clear command.

Notably, the Fourth Circuit's opinion in *Waldburger*, reversed by the Supreme Court, relied heavily on a purposive analysis substantially similar to that of *UBS*:

> [W]e reject a reading of § 9658 that excludes application of its provisions to North Carolina's ten-year limitation. Such an interpretation may seem to be textually sound under one possible reading of the statute, but it offers too narrow an approach and one that thwarts Congress's unmistakable goal of removing barriers to relief from toxic wreckage. Refusing to apply § 9658 to statutes of repose allows states to obliterate legitimate causes of action before they exist. Because this is precisely the barrier that Congress intended § 9658 to address, we will not read the statute in a manner that makes it inapplicable in such a circumstance. Doing so cannot be termed an honest attempt to "effectuate Congress's intent."

*Waldburger v. CTS Corp.*, 723 F.3d 434, 444 (4th Cir. 2013). As discussed above, the Supreme Court explicitly criticized the Fourth Circuit for "invoking the proposition that remedial statutes should be interpreted in a liberal manner," and concluded that "[t]he Court of Appeals was in

31

error when it treated this as a substitute for a conclusion grounded in the statute's text and structure." *Waldburger*, 134 S. Ct. at 2185.  The same is true of the Second Circuit's opinion in *UBS*.

*UBS* cannot be saved by the argument, advanced elsewhere by FHFA, that a presumption in favor of the *government* should apply here, instead of (or in addition to) the general presumption of liberality in construction of remedial statutes held to be inadequate in *Waldburger*.  The government interest in the solvency of regulated financial institutions (or in recouping taxpayer losses attributable to their insolvency) has already been rejected by the Supreme Court as a basis for applying special pro-government rules of decision.  *See O'Melveny*, 512 U.S. at 83; *see also supra* § I.D.  Moreover, the FHFA extender statute does not benefit FHFA in its capacity as "the government," but rather as a representative plaintiff standing in the shoes of an insolvent financial institution.  *See O'Melveny*, 512 U.S. at 85 ("[T]he FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its own rights rather than, as receiver, the rights of [the insolvent bank].").  Any attempt by FHFA to benefit from common law rules or presumptions favoring the government should therefore be rejected.  *See Merrill*, slip op. at 17 ("The Court also rejects the FDIC's argument [that] any ambiguity in the FDIC Extender Statute should be construed in favor of the government.  First, the statute is not ambiguous:  it plainly applies only to statutes of limitations.  Second, the FDIC in its role as receiver 'steps into the shoes' of [the insolvent bank] and should therefore be treated as any other private litigant.") (quoting *O'Melveny*, 512 U.S. at 86-87).

Moreover, *Waldburger* has now given the circuit courts guidance on which features of the statutory text a court should consider when analyzing whether the term "statute of limitations" is meant to supplant a statute of repose.  The Second Circuit in *UBS* did not address

several of the features that compelled the Supreme Court to hold in *Waldburger* that the extender provision at issue did not displace statutes of repose. These features—such as the fact that the statute incorporates concepts of accrual which in no way apply to statutes of repose and repeatedly refers to the "statute of limitations" in the singular rather than plural—should not be ignored.

In sum, because *UBS* has been implicitly overruled by *Waldburger*, it is not controlling here and is no bar to entering summary judgment for RBS.

## III.   IN THE ALTERNATIVE, THIS COURT SHOULD CERTIFY THE ISSUE FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)

If this Court nonetheless determines that it remains bound by *UBS*, this Court should certify this issue for immediate appeal under 28 U.S.C. § 1292(b). Certification under §1292(b) is appropriate because (1) the order appealed from would involve a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order would materially advance the ultimate termination of the litigation. *Id.* Where, as here, "a ruling satisfies these criteria and involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013).

Courts have recognized that interlocutory appeal is appropriate where Court of Appeals precedent speaks to a controlling question of law, but "there is a substantial ground for difference of opinion given [ ] intervening Supreme Court precedent that has not yet been considered in analyzing [the issue]." *Baroque Timber Indus. (Zhongshan) Co., Ltd. v. U.S.*, 865 F. Supp. 2d 1300, 1310 (C.I.T. 2012); *see also Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 493 n.1 (9th Cir. 1979) (discussing grant of interlocutory appeal where "[t]he district judge recognized that substantial doubt had been cast on the validity of" existing circuit precedent by

intervening Supreme Court decision, but "belie[ved] that [the circuit precedent] was still controlling authority in the Circuit, in spite of [the Supreme Court decision]"); *cf. Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1304 (S.D. Fla. 2000) (certifying question for interlocutory review due to intervening state supreme court decision possibly affecting earlier Court of Appeals holding). That is certainly the case here.

The presence of "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), is further confirmed by the starkly different results reached by the *Merrill* and *Nomura* courts concerning *Waldburger*'s impact on the substantively identical FDIC and NCUA extender statutes. The fact that the first two courts to address these issues after *CTS v. Waldburger* have reached diametrically opposed conclusions concerning the significance of the Supreme Court's decision and the text, purposes and history of nearly identical extender provisions highlights that in the event this Court does not dismiss FHFA's claims as time-barred under *Waldburger*, then certification under 28 U.S.C. §1292(b) is appropriate to allow the Second Circuit to resolve these important and case-dispositive issues.

Additionally, interlocutory appeal is appropriate in circumstances such as these where an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In addition to other discovery issues yet to be resolved between FHFA and the Defendants, there are no less than eight pending significant discovery motions before the Court that have yet to be resolved, the parties are about to embark on substantial additional document discovery, as well as party and non-party depositions and costly expert discovery related to more than 7,000 individual loans. There is simply no need to require the Court, the parties, third parties and their respective parties' and third parties' counsel, to devote such time, effort and expense, given the likelihood that the Second Circuit would agree that the HERA extender

statute does not override state and federal statutes of repose in view of *Waldburger*. This is clearly the type of "exceptional case[] where an immediate appeal [would] avoid protracted and expensive litigation."  *Sadowski v. Technical Career Insts., Inc*., 93 Civ. 0455 (PKL), 1995 WL 117595, at *1 (S.D.N.Y. Mar. 16, 1995).

## CONCLUSION

For the foregoing reasons, RBS's motion for summary judgment should be granted.  In the alternative, the Court should certify any decision denying RBS's motion to the Second Circuit for immediate review.

Dated:  August 21, 2014
Hartford, Connecticut

Respectfully submitted,

_____/s/ Timothy A. Diemand_____
Timothy A. Diemand (ct18075)
WIGGIN AND DANA LLP
20 Church Street, 16th Floor
Hartford, CT 06103
Telephone: (860) 297-3700
Facsimile: (860) 525-9380
tdiemand@wiggin.com

Thomas C. Rice (*pro hac vice*)
David J. Woll (*pro hac vice*)
Andrew T. Frankel (*pro hac vice*)
Alan Turner (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
trice@stblaw.com
dwoll@stblaw.com
afrankel@stblaw.com
aturner@stblaw.com
cwaldman@stblaw.com

*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on August 21, 2014, a copy of the foregoing Defendants' Motion for Summary Judgment on the Statutes of Repose was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Timothy A. Diemand*
Timothy A. Diemand (ct18075)
WIGGIN AND DANA LLP
20 Church Street, 16th Floor
Hartford, CT 06103
Telephone: (860) 297-3700
Facsimile: (860) 525-9380
tdiemand@wiggin.com
