**United States District Court**
**District of Connecticut**

```
-------------------------------x
FEDERAL HOUSING FINANCE AGENCY, :
AS CONSERVATOR FOR THE FEDERAL  :
NATIONAL MORTGAGE ASSOCIATION   :
AND THE FEDERAL HOME LOAN       :
MORTGAGE CORPORATION,           :
                                :
            Plaintiff,          :
                                :
v.                              :    CIVIL NO. 3:11CV1383(AWT)
                                :
THE ROYAL BANK OF SCOTLAND      :
GROUP PLC; RBS HOLDINGS USA,    :
INC.; RBS SECURITIES, INC.      :
(f/k/a GREENWICH CAPITAL        :
MARKETS, INC.); RBS FINANCIAL   :
PRODUCTS, INC. (f/k/a           :
GREENWICH CAPITAL FINANCIAL     :
PRODUCTS, INC.), RBS ACCEPTANCE,:
INC. (f/k/a GREENWICH CAPITAL   :
ACCEPTANCE, INC.); FINANCIAL    :
ASSET SECURITIES CORP.; JOSEPH  :
N. WALSH III; CAROL P. MATHIS;  :
ROBERT J. MCGINNIS; JOHN C.     :
ANDERSON; and JAMES M. ESPOSITO,:
                                :
            Defendants.         :
-------------------------------x
```

**RULING ON DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT ON THE STATUTES OF REPOSE**

For the reasons set forth below, the defendants' motion for summary judgment on the statutes of repose is being denied.

**I.    Background**

Plaintiff Federal Housing Finance Agency ("FHFA") alleges in the Amended Complaint that "[b]etween September 30, 2005 and January 23, 2008, Fannie Mae and Freddie Mac purchased over

1

$32.1 billion in residential mortgage-backed securities . . . issued in connection with 68 RBS-sponsored and/or RBS-underwritten securitizations." (Amended Complaint, Doc. No. 40, ¶ 2.) The Amended Complaint asserts claims under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77a et seq., §§ 13.1-522(A)(ii) and 13.1-522(C) of the Virginia Code, and §§ 31-5606.05(a)(1)(B) and 31-5606.05(c) of the District of Columbia Code, as well as a common law claim for negligent misrepresentation.

The gravamen of the Amended Complaint is that Fannie Mae and Freddie Mac, in purchasing the 68 securitizations at issue, relied upon certain false and misleading statements contained in offering documents, and Fannie Mae and Freddie Mac suffered massive losses because of these misrepresentations. FHFA was appointed conservator of Fannie Mae and Freddie Mac on September 6, 2008, and it filed the instant action on September 2, 2011, within three years after the date FHFA was appointed conservator.

The issue in the instant motion is whether 12 U.S.C. § 4617(b)(12), the Housing and Economic Recovery Act of 2008 ("HERA") extender statute, overrides both statutes of limitations and statutes of repose. The Second Circuit in FHFA v. UBS Americas Inc., 712 F.3d 136 (2d Cir. 2013), held that the extender statute "supplants any other time limitations that

2

otherwise might have applied.  As FHFA commenced suit within three years after it was appointed conservator of Freddie Mac and Fannie Mae, the action was timely."  Id. at 144.

After UBS was decided, the Supreme Court issued its opinion in CTS Corp. v. Waldburger, 134 S.Ct. 2175 (2014), holding that the federal commencement date established under 42 U.S.C. § 9658 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") for state personal injury or property damage actions preempted only state statutes of limitations, not statutes of repose.

The defendants contend that, interpreted properly in light of Waldburger, HERA's extender statute likewise displaces only statutes of limitations, and not statutes of repose, and thus, the plaintiff's claims are barred under applicable state and federal statutes of repose.  However, the court concludes that Waldburger is materially different from and does not abrogate UBS.

## II.  Discussion

"[The court's] first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.  [The court's] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent."  Robinson v. Shell Oil Co., 519 U.S. 337, 340

(1997) (internal quotation marks and citation omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 341. "Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but in the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive." Burlington N. R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461 (1987) (internal quotation marks and brackets omitted).

Section 4617(b)(12) of HERA sets forth the statute of limitations for actions brought by FHFA as conservator or receiver:

(12) Statute of limitations for actions brought by conservator or receiver

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Agency as conservator or receiver shall be—
(i) in the case of any contract claim, the longer of—
(I) the 6-year period beginning on the date on which the claim accrues; or
(II) the period applicable under State law; and
(ii) in the case of any tort claim, the longer of--
(I) the 3-year period beginning on the date on which the claim accrues; or

4

> (II) the period applicable under State law.
>
> (B) Determination of the date on which a claim accrues
>
> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of--
> > (i) the date of the appointment of the Agency as conservator or receiver; or
> > (ii) the date on which the cause of action accrues.

12 U.S.C. § 4617(b)(12).

As the Second Circuit explained in UBS, the plain language of § 4617(b)(12) makes it clear that it applies to the claims in this action:

> Section 4617(b)(12) sets forth "the applicable statute of limitations with regard to any action brought by [FHFA] as conservator or receiver." 12 U.S.C. § 4617(b)(12)(A) (emphasis added). . . . It further provides that "the date on which the statute of limitations begins to run" is the later of (i) the date FHFA is appointed conservator or receiver or (ii) the date the cause of action accrues. Id. § 4617(b)(12)(B)(i), (ii).
>
> By explicitly stating that "the" statute of limitations for "any action" brought by FHFA as conservator "shall be" as specified in § 4617(b)(12), Congress clearly provided that the extender statute shall apply to an action such as this one-–an action brought by FHFA, as conservator, to recover "obligations and money" due Fannie Mae and Freddie Mac. Id. § 4617(b)(2)(B)(ii). By using these words, Congress precluded the possibility that some other limitations period might apply to claims brought by FHFA as conservator.

UBS, 712 F.3d at 141-42 (emphasis in original).

The defendants contend that the Supreme Court held in
Waldburger that the use of the term "statute of limitations" in
42 U.S.C. § 9658 does not extend to statutes of repose, so the
use of the term "statute of limitations" in § 4617(b)(12)
likewise does not extend to statutes of repose.  Section 9658
states, in relevant part:

> (a)  State  statutes  of  limitations  for  hazardous
> substance cases
>
> (1) Exception to State statutes
>
> In the case of any action brought under State law
> for personal injury, or property damages, which
> are caused or contributed to by exposure to any
> hazardous substance, or pollutant or contaminant,
> released into the environment from a facility, if
> the applicable limitations period for such action
> (as specified in the State statute of limitations
> or under common law) provides a commencement date
> which is earlier than the federally required
> commencement date, such period shall commence at
> the federally required commencement date in lieu
> of the date specified in such State statute.
>
> (2) State law generally applicable
>
> Except as provided in paragraph (1), the statute
> of limitations established under State law shall
> apply in all actions brought under State law for
> personal injury, or property damages, which are
> caused or contributed to by exposure to any
> hazardous substance, or pollutant or contaminant,
> released into the environment from a facility.

. . . .

> (b) Definitions

. . . .

> (2) Applicable limitations period

6

The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.

(3) Commencement date

The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

(4) Federally required commencement date

   (A) In general

   Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

   (B) Special rules

   In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:

   (i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.

   (ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.

42 U.S.C. § 9658.

7

However, this line of reasoning was rejected by persuasive analysis in two cases involving extender statutes that are identical in all material respects to the extender statute at issue here: <u>Nat'l Credit Union v. Nomura Home Equity Loan</u>, 764 F.3d 1199 (10th Cir. 2014),[1] (the NCUA extender statute) and <u>F.D.I.C. v. RBS Sec. Inc.</u>, No. 14-51055, 2015 WL 4745032, at *1 (5th Cir. Aug. 10, 2015),[2] (the FDIC extender statute).   In <u>Nomura</u>, the Tenth Circuit, after remand by the Supreme Court for further consideration in light of <u>Waldburger</u>, reinstated its opinion holding that the NCUA extender statute displaces both statutes of limitations and statutes of repose.  First, like the court in <u>UBS</u>, the <u>Nomura</u> court concluded that the plain text of the NCUA extender statute supported its conclusion:

> The Extender Statute creates "<u>the</u> applicable statute of limitations" for "<u>any</u> action brought by" NCUA on behalf of a failed credit union. 12 U.S.C. § 1787(b)(14)(A) (emphasis added). The Extender Statute on its face gives the NCUA its own time limits to file enforcement actions on behalf of credit unions in conservatorship or receivership. It specifies the time limits for "any actions" brought by NCUA, irrespective of whether the time limits in the statutes on which such "actions" are based (such as the Securities Act) might expire sooner for other plaintiffs, and irrespective of whether those time limits are statutes of limitations or repose. Put another way, by establishing all-purpose time limits for any actions

---

[1] The provision at issue in <u>Nomura</u> was 12 U.S.C. § 1787(b)(14), which established a statute of limitations for actions brought by the National Credit Union Administration ("NCUA").

[2] The provision at issue in <u>FDIC</u> was 12 U.S.C. § 1821(d)(14), which established a statute of limitations for actions brought by the Federal Deposit Insurance Corporation ("FDIC").

NCUA may wish to pursue, the Extender Statute
[]displaces <u>all</u> preexisting limits on the time to
bring suit, whatever they are called.[]

<u>Nomura</u>, 764 F.3d at 1208 (original brackets omitted).

Then the court discussed why the structure of the NCUA
extender statute also supported its conclusion, pointing out how
the structure is materially different from § 9658:

Section 9658 of CERCLA has a completely different
structure. Rather than setting its own time limit to
bring a personal injury or property damage claim based
on hazardous waste, § 9658 recognizes that the time
limits in state statutes apply. It further provides
the applicable state limitations period starts to run
no earlier than the "federally required commencement
date," 42 U.S.C. § 9658(a)(1), which is defined in
terms of accrual[]--when the plaintiff knew or should
have known of the hazardous waste injury. The
"federally required commencement date" thus functions
as an "'exception' to the regular rule," <u>CTS Corp.</u>,
134 S.Ct. at 2185, that "the statute of limitations
established under State law shall apply...." 42 U.S.C.
§ 9658.

Unlike § 9658's federal commencement date, the
limitations framework provided in the Extender Statute
does not establish a narrow "'exception' to the
regular rule." <u>CTS Corp.</u>, 134 S.Ct. at 2185 (brackets
omitted). Instead, it creates the exclusive time
framework for all NCUA enforcement actions and
replaces all other time periods. Accordingly, unlike
the applicable state limitations periods modified by §
9658's federal commencement date, the time limits
displaced by the Extender Statute need not "fit[ ]
into [its] precise terms...." <u>Id.</u>

The contrast between the two statutes is stark.
The time limits for the federal claims at issue under
the Extender Statute are contained within the Extender
Statute itself and apply only to NCUA actions. The
time limits under § 9658 for personal injury and
property damage actions, on the other hand, are

largely contained in state statutes outside of § 9658
and apply to all plaintiffs.

Nomura, 764 F.3d at 1208-09.  Furthermore, the court quoted the

following from the United States' amicus brief in Waldburger:

> Section 9658 contrasts markedly with other statutes
> [such as the Extender Statute, § 1787(b)(14),] in
> which Congress chose to override all otherwise
> applicable time limitations.... In one set of such
> statutes [including § 1787(b)(14)], Congress created a
> new, exclusive time limitation applicable to claims
> brought by specified federal agencies as conservator,
> receiver, or liquidating agent for failed financial
> institutions.... [In § 9658], by contrast, Congress
> did not enact a new time limitation to supersede all
> others.  Instead, Congress altered particular
> preexisting state statutes of limitations in only one
> limited respect--by changing the date on which the
> cause of action accrued. Congress otherwise left time
> limitations unchanged, explicitly stating that those
> time limitations continue to apply "except" to the
> extent that they are specifically superseded by
> federal law.

Nomura, 764 F.3d at 1209 (brackets in original).

Likewise, in FDIC, the court concluded that the plain text

of the FDIC extender statute "displaces any limitations period

that would interfere with [a three-year grace period]--whether

characterized as a statute of limitations or as a statute of

repose."  2015 WL 4745032, at *8.

> The text of the FDIC Extender Statute indicates
> that it prescribes a new, mandatory statute of
> limitations for actions brought by the FDIC as
> receiver. The extender statute is entitled "Statute of
> limitations for actions brought by conservator or
> receiver," and the statute states "the applicable
> statute of limitations ... shall be" at least three
> years for tort claims. 12 U.S.C. § 1821(d)(14); id.
> § 1821(d)(14)(A). Such mandatory language "preclude[s]

the possibility that some other limitations period might apply" to shorten the three-year minimum period the statute sets out. Nomura II, 764 F.3d at 1226 (quoting UBS, 712 F.3d at 142); Rhodes, 336 P.3d at 965 ("In using the term 'shall' to mandate that the 'applicable statute of limitations ... shall be ... the longer of' six years after the FDIC's claim accrues or 'the period applicable under State law,' Congress barred the possibility that some other time limitation would apply to the FDIC's claim."(alterations in original) (quoting 12 U.S.C. § 1821(d)(14)(A)). Interpreting the statute as excluding repose periods from its ambit would circumvent that mandatory language by providing the FDIC with less than three years from the date of its appointment as receiver to bring claims.

FDIC, 2015 WL 4745032, at *8. The structure of the FDIC

extender statute also supports the court's conclusion.

        But even if the words of the FDIC Extender Statute are considered ambiguous, the statute's structure demonstrates Congress's clear intent to preempt state statutes of repose. See Altria Grp., Inc. v. Good, 555 U.S. 70, 76, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008) ("Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."); see also Teltech Sys., Inc. v. Bryant, 702 F.3d 232, 236 (5th Cir. 2012) (quoting same). The statute begins by setting out its new, exclusive federal limitations period. 12 U.S.C. § 1821(d)(14)(A). By doing so, the statute mandates the application of federal law as the default limitations period. Under this structure, state law is the exception, not the rule. "[T]he period applicable under State law" does not apply unless it fits the precise terms of the statute, namely that it extend more than three years from the date of the FDIC's appointment as receiver. See 12 U.S.C. § 1821(d)(14)(A)(i), (ii). If a "period applicable under State law" does not meet that condition, then it cannot apply under the statute's structure, regardless of its characterization as a statute of limitations or a statute of repose.

FDIC, 2015 WL 4745032, at *13.

Thus, both the plain language and the structure of § 4617(b)(12) show that the provision establishes one limitations period that applies to both the federal and state claims in this case.

Even assuming arguendo that language in § 4617(b)(12) is ambiguous, the legislative history of HERA also supports the conclusion that § 4617(b)(12) displaces statutes of repose.  As an initial matter, the Supreme Court recognized in Waldburger, as had the Second Circuit in UBS, that statutes of limitations and statutes of repose are distinct.

> One central distinction between statutes of limitations and statutes of repose underscores their differing purposes. Statutes of limitations, but not statutes of repose, are subject to equitable tolling, a doctrine that pauses the running of, or "tolls," a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.  Statutes of repose, on the other hand, generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control.

Waldburger, 134 S.Ct. at 1283 (internal quotation marks and citations omitted); see UBS, 712 F.3d at 140 (same).

Also, the Supreme Court recognized in Waldburger that the term "statute of limitations" has been used in a broader sense and that Congress has used the term to refer to statutes of repose.  See Waldburger, 134 S.Ct. at 2185 ("[T]he term 'statute of limitations' is sometimes used in a less formal way.  In that

12

sense, it can refer to any provision restricting the time in which a plaintiff must bring suit. . . . Congress has used the term 'statute of limitations' when enacting statutes of repose. See e.g., 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa) . . . ; 42 U.S.C. § 2278."). The Second Circuit made the same observations in UBS, and in particular, the Second Circuit pointed out that the term "statute of limitations" is used to extend limitations periods for securities fraud actions under the Sarbanes-Oxley Act of 2002, "even though securities claims under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 were governed by a one-year statute of limitations and a three-year statute of repose similar to those in § 13 of the Securities Act." UBS, 712 F.3d at 143.

In UBS, the court concluded that the legislative history of HERA also supports the conclusion that Congress intended to establish one statute of limitations under HERA "to apply to all claims brought by FHFA as conservator." Id. (emphasis in original).

> Congress enacted HERA and created FHFA in response to the housing and economic crisis, precisely because it wanted to address the dire financial condition of Fannie Mae and Freddie Mac. As HERA makes clear, Congress intended FHFA to take action to "collect all obligations and money due" to the GSEs, to restore them to a "sound and solvent condition." 12 U.S.C. § 4617(b)(2)(B)(ii), (D).
>
> Congress obviously realized that it would take time for this new agency to mobilize and to consider

whether it wished to bring any claims and, if so, where and how to do so. Congress enacted HERA's extender statute to give FHFA the time to investigate and develop potential claims on behalf of the GSEs-- and thus it provided for a period of at least three years from the commencement of a conservatorship to bring suit.[ ]

Of course, the collapse of the mortgage-backed securities market was a major cause of the GSEs' financial predicament, and it must have been evident to Congress when it was enacting HERA that FHFA would have to consider potential claims under the federal securities and state Blue Sky laws. It would have made no sense for Congress to have carved out securities claims from the ambit of the extender statute, as doing so would have undermined Congress's intent to restore Fannie Mae and Freddie Mac to financial stability.

UBS, 712 F.3d at 142. See also Nomura, 764 F.3d at 1215

(concluding that "the legislative purpose of FIRREA supports the

conclusion that the [NCUA] Extender Statute applies to statutes

of repose"); FDIC, 2015 WL 4745032, at *15 (concluding that

"[t]o the extent the text and structure of the FDIC Extender

Statute leave any doubt that it is intended to displace both

statutes of limitations and statutes of repose, it is dispelled

by the statute's purpose").

The defendants contend that Waldburger afforded

interpretive significance to the fact that prior to the passage

of CERCLA it was "well-established" that statutes of repose and

statutes of limitations are distinct concepts, and the same

interpretive significance should be afforded to HERA.  However,

the interpretive significance afforded by the Supreme Court is

tied to § 9658's legislative history -- namely, the Supreme
Court found it material that the 1982 Study Group Report,
commissioned by Congress, "referred to statutes of repose as a
distinct category[,]" yet, when Congress enacted § 9658, it "did
not make the same distinction." Waldburger, 134 S.Ct. at 2186.
The fact that Congress did not make that distinction in § 9658
was telling in light of the fact that Congress had used the term
"statute of limitations" to refer to statutes of repose.
However, there is nothing comparable in the legislative history
of HERA.

In addition, the defendants argue that the HERA extender
statute employs the concept of accrual that pertain only to
statutes of limitations. In Waldburger, the Supreme Court
stated that § 9658 described the "applicable limitations period"
as "the period during which a civil action under state law may
be brought." Waldburger, 134 S.Ct. at 2187 (quoting
§ 9658(b)(2))(internal quotation marks omitted). On the other
hand, the Court explained that "[a] statute of repose . . . is
not related to the accrual of any cause of action. Rather, it
mandates that there shall be no cause of action beyond a certain
point, even if no cause of action has yet accrued." Id.
(citation and internal quotation marks omitted). Given the
definition of "applicable limitations period" and the distinct
purpose of statutes of repose, the Court concluded that

15

§ 9658(b)(2) "is best read to encompass only statutes of limitations . . . ."  <u>Id.</u>

However, the Supreme Court's analysis must be read in its entirety.  The Court began its analysis by stating that "[s]ection 9658 adopts what is known as the discovery rule. Under this framework, statutes of limitations in covered actions begin to run when a plaintiff discovers, or reasonably should have discovered, that the harm in question was caused by the contaminant."  <u>Waldburger</u>, 134 S.Ct. at 2180.  The discovery rule is reflected in § 9658 in the definition of the term "federally required commencement date," which is "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance . . . ."  42 U.S.C. § 9658(b)(4)(A).

The HERA extender statute adopts a broader framework in determining the date on which a claim accrues.  Section 4617(b)(12)(B) states that the statute of limitations begins to run on the later of "the date of the appointment of the Agency as conservator or receiver" or "the date on which the cause of action accrues."  12 U.S.C. § 4617(b)(12)(B)(i)-(ii). Subparagraph (B) thus permits the statute of limitations to begin to run the later of "when the injury occurred or was discovered[,]" Black's Law Dictionary 1636 (10th ed. 2014)

16

(defining statute of limitations), or "when a specific event

occurs, regardless of whether a cause of action has accrued[,]"

id. at 1637 (defining statute of repose and quoting 54 C.J.S.

Limitations of Actions § 4) -- namely, the date FHFA is

appointed conservator.  See also Nomura, 764 F.3d at 1211 ("[W]e

further observed the 'Extender Statute also includes the concept

of repose[]' . . . Option (i) invokes the concept of repose

because it is based on when a specific event occurs, regardless

of whether the plaintiff is aware of the injury.").

In any event, the plain language of § 4617(b)(12)(A) shows

that the extender statute uses "accrual" as part of the new

limitations period created for FHFA.  See generally 12 U.S.C.

§ 4617(b)(12).  The court in Nomura reached the same conclusion.

> Defendants argue that the Extender Statute's
> reference to accrual means that it may only apply if
> the time limit being displaced is also subject to
> accrual--that is, when the displaced time limit falls
> within the narrow meaning of "statute of limitations."
> But this argument confuses what the Extender Statute
> does--sets an all-purpose time frame for NCUA to bring
> enforcement actions on behalf of failed credit unions—
> with what it replaces--the preexisting time frames to
> bring "any action."

Nomura, 764 F.3d at 1229.  So did the court in FDIC.  See 2015

WL 4745032, at *12 ("'[A]ccrual' is used as part of the new,

federal limitations period the [FDIC] extender statute

prescribes; it does not describe what it replaces.").

The defendants also argue that like § 9658, the HERA extender statute describes the covered period in the singular and uses the term "statute of limitations" in the singular, which the Supreme Court in <u>Waldburger</u> found to evince legislative intent that the limitations period not cover statutes of repose.  However, as the court explained in <u>Nomura</u>, "[t]he Extender Statute does not use the term 'period' in a comparable way."  764 F.3d at 1212.

> Unlike § 9658, however, which employs the word "period" in the singular to describe the "applicable <u>limitations</u> period," 42 U.S.C. § 9658(a)(1) (emphasis added), the Extender Statute refers generally to the "period applicable under State law," 12 U.S.C. § 12 U.S.C. § 1787(b)(14)(A)(i)(II) & (ii)(II), without using the word "limitations" to modify "period." Moreover, unlike § 9658, which employs the term "applicable limitations period" to identify the state law time frame modified by the federal commencement date (that is, the specific object of federal preemption), the Extender Statute uses "period applicable under State law" to help construct a new exclusive time framework for NCUA actions that replaces all pre-existing time limits (including repose periods). Whether the state period used to construct this framework is one of limitations or repose has no bearing on whether the new Extender Statute framework itself displaces statutes of repose.

<u>Nomura</u>, 764 F.3d at 1212.  <u>See also</u> <u>FDIC</u>, 2015 WL 4745032, at *11 ("While the FDIC Extender Statute does use the singular, it does not do so to describe the period being preempted. . . . Rather, the singular is used to describe the new, federal statute of limitations and the state law period that it conditionally borrows.").

Moreover, the court's analysis of HERA's revival provision, § 4617(b)(13)(A),[3] in FHFA v. HSBC N. America Holdings, Inc., Nos. 11cv6189 (DLC), 11cv6201 (DLC), 2014 WL 4276420, at *5 (S.D.N.Y. Aug. 28, 2014), buttresses the Tenth Circuit's explanation.  There, the court read the revival provision as covering "five years from the date the limitations period 'expired'--i.e., when the claim became untimely--which is a single date, whether or not repose periods are included."  Id. The court reasoned that if the term "statute of limitations" did not encompass statutes of repose as the defendants contended, then "[the] defendants would have HERA resuscitate claims five years after the discovery-based period had run, but leave untouched claims barred by a two- or three-year repose period. That result would be wholly out of keeping with HERA's structure and purpose."  Id. at *5.

The defendants also argue that the presumption against preemption of state law supports their construction of the HERA

---

[3] The revival provision states in pertinent part:

(13) Revival of expired state causes of action

(A) In general

In the case of any tort claim described under clause (ii) for which the statute of limitations applicable under State law with respect to such claim has expired not more than 5 years before the appointment of the Agency as conservator or receiver, the Agency may bring an action as conservator or receiver on such claim without regard to the expiration of the statute of limitations applicable under State law.

12 U.S.C. § 4617(b)(13)(A).

19

extender statute.  As the Supreme Court explained in <u>Waldburger</u>,
courts are to

> assume[] that the historic police powers of the States
> were not to be superseded by the Federal Act unless
> that was the clear and manifest purpose of Congress. .
> . . The effect of that presumption is to support,
> where plausible, "a narrow interpretation" of an
> express pre-emption provision, . . . especially []when
> Congress has legislated in a field traditionally
> occupied by the States[.] The presumption has greatest
> force when Congress legislates in an area
> traditionally governed by the States' police powers.

134 S.Ct. at 2188 (internal citations omitted).  Section 9658 on
its face creates an exception to the limitations period imposed
under state statutes of limitations for personal injury or
property damages, and "there is no question that States possess
the traditional authority to provide tort remedies to their
citizens as they see fit."  <u>Id.</u>  However, as the court explained
in <u>HSBC</u>, "by contrast, '[p]olicing fraud against federal
agencies is hardly a field which the States have traditionally
occupied.'  Thus, any such presumption applied here would be
weak."  <u>HSBC</u>, 2014 WL 4276420, at *6 (quoting <u>Buckman Co. v.
Plaintiffs' Legal Comm.</u>, 531 U.S. 341, 347 (2001)).

Finally, the defendants request that the court certify for
immediate appeal under 28 U.S.C. § 1292(b) the issue of whether
the HERA extender statute overrides both statutes of limitations
and statutes of repose in light of <u>Waldburger</u>.  Certification is
appropriate if the order appealed from "involves a controlling

question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

The court concludes that it is not appropriate to certify the issue for interlocutory appeal because, <u>inter</u> <u>alia</u>, absent here is a substantial ground for difference of opinion as to the impact of <u>Waldburger</u> on the Second Circuit's holding in <u>UBS</u>. This is not a situation where the district court believes that it is bound by controlling authority in the circuit despite a decision by the Supreme Court.  This court's analysis and conclusion are entirely consistent with those in <u>UBS</u>.  Also, the defendants argue that the presence of "substantial ground for difference of opinion" is confirmed by the different results reached in <u>Nomura</u> and <u>FDIC v. Merrill Lynch</u>, No. A-14-CA-126-SS, 2014 WL 4161561, at *9 (W.D. Tex. Aug. 18, 2014).  However, <u>Merrill</u> was overturned by <u>FDIC</u>.

**III. Conclusion**

For the reasons set forth above, the defendants' Motion for Summary Judgment on the Statutes of Repose (Doc. No. 420) is hereby DENIED.

It is so ordered.

Signed this 21st day of August 2015, at Hartford, Connecticut.

_____/s/_____
                 Alvin W. Thompson
        United States District Judge